1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  HAMMES COMPANY HEALTHCARE, LLC; HC TRI-CITY I, LLC, | CASE NOS. 09-CV-2324 JLS (CAB) and 09-CV-2334 JLS (CAB) |
| 12                    Plaintiffs and Cross-Defendants, | **ORDER** |
| 13            vs. | |
| 14  TRI-CITY HEALTHCARE DISTRICT; LARRY ANDERSON; PAMELA SMITH; et al., | |
| 15 | |
| 16                    Defendants and Counter-claimants. | |
| 17  AND RELATED ACTION. | |
| 18 | |

19        Presently before the Court are several motions in two related cases, *Hammes Co.*

20  *Healthcare, LLC and HC Tri-City I, LLC v. Tri-City Healthcare District, et al.*, Case No. 09-CV-

21  2324 JLS (CAB) [hereinafter "the lead case" or "2324"] and *Tri-City Healthcare District v. HC*

22  *Tri-City I, LLC*, Case No. 09-CV-2334 JLS (CAB) [hereinafter "the related case" or "2334"].

23  Defendant Tri-City Healthcare District (Tri-City) in the lead case is the Plaintiff in the related

24  case.  Conversely, Plaintiff HC Tri-City I, LLC (HC) in the lead case is the Defendant in the

25  related case.  Hammes Co. Healthcare, LLC (Hammes) is also a Plaintiff in the lead case.

26        Tri-City filed a motion for leave to file a second amended complaint (2334 ECF No. 36)

27  and a motion for summary judgment (2334 ECF No. 37) in the related case.  Subsequently,

28  Hammes and HC filed a motion for reconsideration (2324 ECF No. 89), motion to issue order,

injunction, or transfer (2324 ECF No. 91), and Hammes filed a motion for summary judgment (2324 ECF No. 92) in the lead case. Also before the Court are the parties' oppositions and replies to these motions. The Court held oral argument on these matters on December 1, 2011, and took the matter under submission.

Several other motions are also pending in these cases. On October 17, 2011, HC moved for summary judgment in the related case. (2334 ECF No. 42.) On October 19, 2011, Tri-City moved for sanctions in the lead case. (2324 ECF No. 101.) On November 16, 2011, Hammes filed an ex parte motion to dismiss Defendant Larry Anderson on November 16, 2011 (2324 ECF No. 106; 2334 ECF No. 47), which Tri-City opposed.

Having considered the parties' arguments and the law relating to the instant motions, the Court rules as follows:

1. Hammes and HC's motion for reconsideration (2324 ECF No. 89) is **DENIED**.

2. The Court **STRIKES** lines 20-26 on page 17 of its July 11, 2011 Order. (2324 ECF No. 85.)

3. Tri-City's request for leave to amend to delete its second cause of action in the related case (2334 ECF No. 36) is **GRANTED**.

4. Tri-City's motion for summary judgment of its first claim in the related case (2334 ECF No. 37) is **DENIED**.

5. Hammes and HC's motion for restraining order, injunction, or transfer, and sanctions in the lead case (2324 ECF No. 91) is **DENIED**.

6. Hammes' motion for summary judgment of the first claim in the lead case (2324 ECF No. 92) is **DENIED**.

7. Hammes and HC's ex parte motion to dismiss Defendant Larry Anderson in both cases (2324 ECF No. 106; 2334 ECF No. 47) is **DENIED**.

### BACKGROUND

The Court has already elaborated much of the relevant background in its previous order in the lead case, incorporated here for convenience. (*See* July 11, 2011 Order, 2324 ECF No. 85.) //

1    These actions arise from the failed development of an outpatient surgery center and

2  medical office building adjacent to the Tri-City Medical Center and Hospital in Oceanside,

3  California (the project).  Hammes is a healthcare facility design and development company that

4  works with hospitals and medical districts throughout the country.  HC is a special purpose entity

5  formed for the purpose of leasing the real property upon which the medical office building was to

6  be located and constructing the medical office building.

7    Tri-City is a public entity duly organized under California law.  Larry Anderson and

8  Pamela Smith, also parties to these actions in association with Tri-City, are Tri-City's Chief

9  Executive Officer and Director of Business Development, respectively.

10    In May 2005, Hammes and Tri-City entered into a letter of intent regarding the project's

11  development.  The letter of intent outlined the transaction's proposed terms and directed Hammes

12  to engage in certain pre-construction services related to the project.  The agreement further

13  provided that Tri-City would reimburse Hammes for its initial development costs and pay a

14  breakage fee if, *inter alia*, Tri-City decided at its sole discretion not to proceed with the project.

15    In July 2007, HC entered into a ground lease with Tri-City.  The ground lease provided that

16  HC would lease for fifty-five years the real property upon which the medical office building was

17  to be located.  The ground lease provided three contingencies—two that were waivable at HC's

18  option, and one that was a non-waivable condition precedent to construction of the medical office

19  building.

20    In July 2008, HC entered into a space lease with Pacific View Surgery Center, LLC

21  (Pacific View).  Pacific View, a joint venture between Tri-City and its physicians, was to occupy

22  approximately 38% of the medical office building after its completion.  Tri-City also signed the

23  space lease, but did so solely as a guarantor of Pacific View's obligations thereunder.

24    For reasons that are in dispute, the project was terminated in early 2009, and Tri-City did

25  not reimburse Hammes or HC for any initial development costs that they incurred.  The lead case

26  and related case ensued.

27    In the lead case, Hammes and HC asserted six claims against Tri-City for: (1) breach of the

28  letter of intent, (2) breach of the ground lease and space lease, (3) breach of the implied covenant

of good faith and fair dealing, (4) fraud, (5) tortious interference with the space lease, and (6) promissory estoppel.  On July 11, 2011, the Court granted Tri-City's motion for summary judgment as to the second through sixth claims, and now only Hammes's claim for breach of the letter of intent remains.  (2324 ECF No. 85.)  Hammes and HC now move for reconsideration of that order, as well as for an order or injunction, or, in the alternative, a transfer, and Hammes moves for summary judgment of the first claim.

In the related case, Tri-City's operative complaint states two claims against HC, the first for declaratory relief that Tri-City is not liable to HC under the ground lease and that Tri-City is excused from performance under the ground lease, and the second for breach of contract by HC.  (Tri-City's Am. Compl., 2334 ECF No. 25.)  Tri-City now seeks to amend its complaint a second time to dismiss the second cause of action, leaving only the first claim for declaratory relief.  Tri-City also moves for summary judgment of the first cause of action.

**1. Motion for Reconsideration in the Lead Case**

*A. Legal Standard*

Hammes and HC bring the instant request for reconsideration under Federal Rule of Civil Procedure 54(b).  (Mem. ISO Mot. for Recons. 5, 2324 ECF No. 89.)  That rule provides, in relevant part, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).

Generally, a court will reconsider a decision if a party can show (1) new facts, (2) new law, or (3) clear error in the court's prior decision.  *See, e.g.*, *School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003).  However, reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."  *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)) (emphasis in original); *cf. Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) (finding reconsideration

1   should not be used "to argue new facts or issues that inexcusably were not presented to the court in

2   the matter previously decided."). Ultimately, the decision on a motion for reconsideration lies in

3   the Court's sound discretion. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir.2003) (citing

4   *Kona Enters.*, 229 F.3d at 883).

5   ***B. Analysis***

6      HC's[1] motion for reconsideration does not raise new law or new facts that could not have

7   reasonably been presented in opposition to the underlying motion for summary judgment. Instead,

8   the motion points to Tri-City's December 11, 2008 board meeting which allegedly ratified the

9   ground lease and approved a six month extension of the otherwise expired pre-leasing

10  contingency. (Mem. ISO Mot. for Recons. 2.)  HC argues that the Court's failure to consider this

11  meeting in its July 11, 2011 Order lead to a "manifest error existing between the evidence and

12  application of law." (*Id.* at 5.)  Thus, HC argues that the Court's July 11, 2011 Order is in clear

13  error.

14     Tri-City has two primary responses to this board meeting ratification argument. (Opp'n to

15  Mot. for Recons. 2, 2324 ECF No. 98.)  First, Tri-City points out that the board meeting is not a

16  "new" fact, that Plaintiffs knew about the board meeting long before they opposed the motion for

17  summary judgment, and that as a result the Court's consideration of this evidence now on motion

18  for reconsideration is improper.  Second, Tri-City states that the board meeting did not ratify the

19  ground lease, and that HC's argument directly contradicts the theory it asserted in opposition to

20  summary judgment.

21     In ruling on HC's instant motion for reconsideration, the Court first examines the

22  underlying decision that the ground lease was null and void in its July 11, 2011 Order. After doing

23  so, the Court concludes that HC has no valid basis for reconsideration and that the June 11, 2011

24  Order was not in error. Finally, even if it considers HC's additional arguments, the Court rejects

25  //

---

26  [1]The motion for reconsideration was brought by both Hammes and HC.  However, in this
27  motion, the parties do not appear to contest the Court's determination that Hammes is not a third-party
    beneficiary of the ground lease or space lease, or the Court's subsequent grant of summary judgment
28  as to Hammes's claim for breaches of these agreements.  (July 11, 2011 Order 10.)  Thus, for
    simplicity, the Court refers to HC only as the party moving for reconsideration in this Order.

1  HC's arguments that this decision was in error for failure to consider Tri-City's December 11,

2  2008 board meeting or amendments to the ground lease.

3  *(i) July 11, 2011 Order*

4          In its Order granting partial summary judgment, the Court considered the parties'

5  arguments regarding the ground lease on pages 11-13. Finding the ground lease "null and void"

6  and granting summary judgment of HC's claim for breach of the ground lease, the Court then

7  determined that the failure of the ground lease prevented HC from performing under the space

8  lease and that HC suffered no damages, finding that summary judgment of HC's claim for breach

9  of the space lease was also appropriate. (July 11, 2011 Order 15-16.)  The Court's determination

10  that the ground lease was void in turn impacted several of HC's other causes of action.  HC now

11  moves the Court to reconsider that determination.

12          As stated in the Court's July 11, 2011 Order, the ground lease imposed several conditions

13  precedent.  (*Id.* at 11.)  A condition precedent is "an act that must be performed or an uncertain

14  event that must happen before the promisor's duty of performance arises."  1 Witkin, Summary

15  10th Contracts § 776 (2005).  In support of summary judgment, Tri-City argued that these

16  conditions were never met, voiding the contract and excusing its performance.  HC opposed this

17  interpretation, asserting instead that these conditions were waivable by HC and that, regardless,

18  they were satisfied.  HC argued that Tri-City subsequently breached this enforceable contract.

19          The Court discussed three conditions present to the ground lease in its July 11, 2011 Order:

20  the financing contingency (section 15.1), the government approval contingency (section 15.4), and

21  the pre-leasing contingency (section 15.2).  (July 11, 2011 Order 11-13.)  All three conditions

22  were expressly stated in the contract, and as such are determined by the intention of the parties as

23  disclosed in the agreement.  *Schwab v. Bridge*, 27 Cal. App. 204, 206-07 (1915).  The Court

24  deemed the financing contingency[2] "clear on its face," finding that it was a condition precedent for

25

26          [2]The financing contingency required HC to obtain financing "in form and substance reasonably
   acceptable to Lessee."  (Ground Lease section 15.1; July 11, 2011 Order 11.)  If HC was unable to do
27  so, it could notify Tri-City and declare the lease null and void, at which point Tri-City would be liable
   to HC for 50% of HC's initial development costs.  However, if HC did not so notify Tri-City, the lease
28  remained "in full force and effect" and the contingency would "be deemed to be waived."  (*Id.*)

HC's benefit, waivable by HC.  (*Id.* at 12.)  Similarly, the Court found the government approval contingency[3] operated in HC's favor and was waivable by HC.  (*Id.*)

The third condition, the pre-leasing contingency[4], was less clear.  Finding it to be a "paradigm of poor draftsmanship," the Court noted that although the provision purportedly could be met "at [HC's] sole option," it did not give HC the right to waive the pre-leasing contingency. (*Id.*)  Instead, HC was prohibited from commencing construction until Tri-City consented to the contingency's satisfaction.  (*Id.*)  The Court found that ultimately the pre-leasing contingency gave HC two options: "satisfy the contingency and obtain Tri-City's consent to satisfaction, or terminate."  (*Id.* at 12-13.)  Thus, the Court held that the condition was not waivable by HC alone, but instead operated "in favor of both parties."  (*Id.* at 13.)  "If HC failed to satisfy the pre-leasing contingency, neither party was obligated to perform under the lease."  (*Id.*)  Thus, the Court found this condition was waivable only if both parties agreed to waive it.[5]

_____

[3]The governmental approval contingency required HC to use "commercially reasonable efforts to obtain all required governmental approvals for the development and construction of the Improvements in the manner intended by" HC. (Ground Lease section 15.4; July 11, 2011 Order 12.) Just as with the financing contingency, if HC was unable to obtain the required government approvals, it could notify Tri-City and declare the lease null and void; again, Tri-City would be liable to HC for 50% of HC's initial development costs.  If HC did not so notify Tri-City, the lease remained "in full force and effect" and the contingency would "be deemed to be waived."  (*Id.*)

[4]The pre-leasing contingency expressly prohibited HC from commencing construction unless it had entered into leases with qualified medical tenants covering at least 70% of the rentable square feet of the medical office building. (Ground Lease section 15.2; July 11, 2011 Order 12.) It provides:

> Lessee shall not commence, nor shall Lessee be required to commence, any construction at the Ground Leased Premises until such time as Lessee has entered into leases with Qualified Medical Tenants covering not less than seventy percent (70%) of the rentable square feet of the [medical office building], which leases shall include a fifteen (15) year triple net lease with a joint venture entity (of which Lessor shall be a party) for an approximately 15,000 rentable square foot ambulatory surgery center . . . regardless of the total rentable square footage leased . . . . The Pre-Leasing Requirement may be met, at Lessee's sole option, upon Lessee delivering to Lessor leases covering not less than seventy percent (70%) of the rentable square feet of the MOB and a statement of Lessee's intent to declare the Pre-Leasing Requirement satisfied, and Lessor consenting to the satisfaction of the Pre-Leasing Requirement, which consent may not be unreasonably withheld.

(Ground Lease section 15.2(a); July 11, 2011 Order 13.)

[5]HC has misstated the Court's July 11, 2011 Order as having determined that the ground lease was "voidable in [Tri-City's] sole discretion."  (Mem. ISO Mot. for Recons. 4, 6.)

1    Because it appears HC has misunderstood the July 11 Order in this respect, the Court

2    clarifies briefly here.  HC argues that the Court's determination that the pre-leasing contingency is

3    "a paradigm of poor draftsmanship" indicates that there is at least a triable issue of fact.  (Mem.

4    ISO Mot. for Recons. 3; July 11, 2011 Order 12.)  It is well-established that conditions precedent

5    are disfavored, and that "a contract is not to be construed to provide a forfeiture unless no other

6    interpretation is reasonably possible."  *Serv. Emps. Int'l Union, Local 715, AFL-CIO v. Cupertino*

7    *Sch. Dist.*, 31 Cal. Rptr. 3d 858, 869 (2005) (quoting *Universal Sales Corp. v. Cal. etc. Mfg. Co.*,

8    20 Cal. 2d 751, 771 (1942)).  Thus, "stipulations in an agreement are not to be construed as

9    conditions precedent unless such construction is required by clear, unambiguous language; and

10   particularly so where a forfeiture would be involved or inequitable consequences would result."

11   *Id.*  (quoting *Alpha Beta Food Markets v. Retail Clerks*, 45 Cal. 2d 764, 771 (1955)).  However,

12   the Court found that by expressly prohibiting HC from commencing construction unless it had

13   entered into leases with qualified medical tenants covering at least 70% of the rentable square feet

14   of the office building, the parties clearly intended to create a condition precedent.  In stating that

15   the contingency was a "paradigm of poor draftsmanship," the Court referred only to the

16   contingency's indication of which party the contingency operated in favor of, not the initial

17   determination, already made, that the contingency created a condition precedent.  Thus, the Court

18   found, and affirms here, that interpreting the pre-leasing contingency as a condition precedent was

19   required by the clear, unambiguous language of the contract.

20   The contested issue at summary judgment, and now, concerns whether the pre-leasing

21   contingency was satisfied or waived.  HC argued that the pre-leasing contingency was satisfied

22   because HC had commitments to lease approximately 70% of the medical office building.  The

23   Court rejected this argument because "commitments to lease," as opposed to actual leases, did not

24   satisfy the contingency.  (July 11, 2011 Order 13.)

25   In contending that it could assert a valid claim for breach of contract in spite of its failure

26   to satisfy the pre-leasing contingency, HC advanced two arguments: first, that Tri-City breached

27   the ground lease in early 2009 "before any conditions were even at issue or due," and second that

28   Tri-City's April 2009 "statements of termination estop [Tri-City] from asserting that HC did not

1   fulfill the conditions precedent months after the fact." (*Id.* at 14 (quoting HC's Opp'n to Tri-

2   City's MSJ 14, 18.))

3         The Court rejected HC's first argument, finding that the date for satisfaction of the pre-

4   leasing contingency was December 31, 2007, by the terms of the ground lease and HC's own

5   express admission. (July 11, 2011 Order 14; Ground Lease section 15.2(b).)  Thus, even if Tri-

6   City breached the ground lease in "early 2009" by terminating the project, as HC claims, this

7   termination came after the deadline for the pre-leasing condition precedent had expired.  The

8   Court reasoned that Tri-City's alleged 2009 termination could not possibly be grounds for a breach

9   because HC's earlier failure to satisfy the pre-leasing contingency had already excused the parties'

10  performance under the terms of the contract. (*Id.*)

11        HC's second argument failed as well.  Having found that the pre-leasing contingency was

12  due on December 31, 2007, the Court reasoned that statements made by Tri-City in 2009 could not

13  possibly have induced forbearance by HC. (*Id.*)  "Unless Tri-City has a time machine, there is no

14  way that it could have induced HC, in April 2009, not to satisfy a condition due on December 31,

15  2007.  Once again, the laws of physics prevail." (*Id.*)

16        After considering these arguments and the law, the Court held that there "is no genuine

17  issue of material fact that HC failed to satisfy the pre-leasing contingency, and HC's attempts to

18  save it fall short." (*Id.* at 14.)  Because the contingency was not met, neither party was obligated

19  to perform, and the ground lease was "null and void." (*Id.* at 15.)  Thus, the Court granted

20  summary judgment of HC's claim for breach of the ground lease.

21  *(ii)  December 11, 2008 Board Meeting*

22        HC now argues that the ground lease was not "null and void" because Tri-City "ratified"

23  the lease at a board meeting on December 11, 2008. (Mem. ISO Mot. for Recons. 2.)  According

24  to HC, this ratification constituted a sixth month extension until June 30, 2009. (*Id.*)  By HC's

25  reasoning, even though the pre-leasing contingency date had already passed, the actions of the Tri-

26  City board on December 11, 2008 somehow rendered the contract valid until June 30, 2009. (*Id.*)

27  HC states that Tri-City "signed an amendment to confirm this ratification and the continued

28  enforceability of the Ground Lease." (*Id.* at 7.)  HC asserts that the Court erred by finding

1    December 31, 2007 was "the key date" for the satisfaction of the pre-leasing contingency, and that

2    after the board's ratification "the key date *became June 30, 2009*." (*Id.* at 8.) Then, subsequent to

3    ratifying the contract, Tri-City allegedly breached the ground lease by terminating the project and

4    seeking to "take Plaintiffs' plans." (*Id.* at 2.)

5        The minutes of the December 11, 2008 board meeting, proffered for the first time in

6    support of HC's motion for reconsideration, indicate that the board was considering a proposed

7    amendment to the ground lease at that meeting. (Bournazian Decl. Ex. A 8-10.) Mr. Coleman,

8    Vice President of Strategic Services, reported "on potential consequences of not approving this six

9    month extension, notably the possibility of Hammes pulling out of the project, resulting in the

10   District incurring half of the development costs invested to date." (*Id.* at Ex. A 9.) Mr. Coleman

11   cited "delays within the Oceanside Planning Department and economic factors" as reasons the

12   project was behind schedule. (*Id.*) According to the minutes, the current lease would expire

13   December 31, 2008 and the proposed amendment would grant a six month extension to June 30,

14   2009. (*Id.*) Mr. Coleman reported that Tri-City would not incur any additional costs by extending

15   the lease, and that the sixth month extension would provide Tri-City "time to review the contract

16   and discuss any additional opportunities." (*Id.*) After several directors moved to table the

17   discussion of the proposed amendment, the minutes read: "Legal Counsel clarified that if the

18   motion to table passes, the lease as it currently exists will expire and the District would not have

19   an opportunity to revisit the lease, because it would be terminated and would no longer exist."

20   (*Id.*) The Directors voted not to table the motion to approve the sixth month extension. (*Id.*) The

21   motion to approve the lease extension passed. (*Id.*)

22       However, the terms of the "sixth month extension" authorized at the December 11, 2008

23   board meeting do impact the pre-leasing contingency date. Neither the May 30, 2008 Amendment

24   nor the December 30, 2008 Amendment references the section 15.2 pre-leasing contingency at all.

25   (Bournznazian Decl. Ex. J 90-93.) Both amendments explicitly extend the period for the financing

26   contingency and the government approvals contingency, but not the pre-leasing contingency.

27       HC does not directly address this fact, instead emphasizing that at the December 11, 2008

28   board meeting Tri-City acknowledged the ground lease was "potentially voidable" and yet ratified

1    it "until and including June 20, 2009."  (Reply ISO Mot. for Recons. 1, 2324 ECF No. 104.)  It

2    would appear from the terms of the December 30, 2008 amendment that the "potentially voidable"

3    status of the lease arose from the impending expiration of the financing and government approval

4    contingencies.  (*Id.* Ex. J 92.)  HC's own admission established the pre-leasing contingency was

5    not impacted by the amendments, and that December 31, 2007 remained the operative deadline for

6    the satisfaction of the pre-leasing contingency.  (July 11, 2011 Order 14) (quoting HC's Opp'n to

7    MSJ 4 ("The pre-leasing contingency was *not amended* and passed as of December 31, 2007")

8    (emphasis added)).[6]

9          Although the express terms of the amendments clearly do not extend the deadline for

10   satisfaction of the pre-leasing contingency, HC also appears to argue that the December 11, 2008

11   board meeting otherwise ratified the ground lease, thus amending the pre-leasing contingency and

12   extending the deadline by implication.  (Reply ISO Mot. for Recons. 1-2, 5-6.)  In support of this

13   contention, HC offers evidence produced by Tri-City, first raised by HC in its reply in support of

14   the instant motion for reconsideration, entitled "Tri-City Healthcare District Ground Lease

15   Amendment Two, November 19, 2008" (Supp. Bournazian Decl. Ex. K, 2324 ECF No. 104-2),

16   which states:

> While there are current negotiations with several potential tenants, to date only 38% of the space has been leased.  The Ground Lease specifies that construction will commence only upon leasing 70% of the building space. . . .
>
> In May 2008 the [Tri-City] Board extended the timeframe required for City approval in the Ground Lease to December 31, 2008 by executing the First Amendment to the Ground Lease.  It is now necessary to further extend this timeframe to allow for pursuit of additional leases to achieve the leasing threshold of 70%.  Therefore, it is proposed that the Ground Lease be amended to extend the timeframe to June 30, 2009. . . .

_____

[6]In opposition to the instant motion for reconsideration, Tri-City asserts that the pre-leasing contingency was never amended and thus the deadline never changed, and also posits that this is "frankly irrelevant" because it is an undisputed fact that HC never satisfied the pre-leasing contingency. (Opp'n to Mot. for Recons. 3.)  The Court agrees with Tri-City as to the former, but not the latter.  The operative deadline for satisfaction of the pre-leasing contingency is not rendered irrelevant by HC's failure to ever satisfy the pre-leasing contingency.  Conceivably, an extension of the pre-leasing contingency period could impact the viability of HC's arguments regarding waiver, estoppel, and potentially anticipatory breach by Tri-City.  However, as reasoned above, the Court agrees with Tri-City that the pre-leasing contingency deadline was December 31, 2007, as previously admitted by both parties and supported by the evidence.

1

2

> If timeframes in the Ground Lease are not extended, the project would be terminated and Tri-City Medical Center would be responsible for one-half of the development costs, approximately $403,467. . . .

3

4

> I move that the . . . Board of Directors approve the Second Amendment to the Ground Lease to extend the timeframe referenced in Section 15.1 Financing Contingency and Section 15.4 Governmental Approvals to June 30, 2009.

5   From this document, HC now concludes that the Ground lease "was thus amended and/or ratified

6   by the District for *all contingencies* until June 30, 2009, including the pre-leasing contingencies as

7   expressly stated by the District in Tri-City013108 (Exhibit "K")."  (Reply ISO Mot. for Recons. 2)

8   (emphasis added.)

9   *(iii)  HC's Failure to Present "New" Facts Earlier*

10          Tri-City argues that HC's motion to reconsider improperly raises "additional" evidence

11  regarding the December 11, 2008 board meeting, because this evidence should have been raised at

12  the summary judgment stage.  (Opp'n to Mot. for Recons. 3.)  The Court notes further that HC

13  offered the November 19, 2008 document for the first time in its *reply* in support of this motion.

14  HC had attempted to raise similar arguments regarding amendment and waiver after the hearing on

15  Tri-City's motion for summary judgment, but the Court denied HC's request, finding that HC had

16  not shown good cause and that it had already been given three opportunities to oppose the motion.

17  (July 11, 2011 Order 1 n.1.)  The Court further found that, even if it were to consider HC's

18  supplemental arguments, it would find them unpersuasive because they overlooked the "no

19  waivers" provision of the ground lease and the fact that the amendments expressly affirmed all

20  other terms of the ground lease, including the terms of the pre-leasing contingency.  (*Id.* at 14-15

21  n.13.)  "Thus, Tri-City could invoke the pre-leasing contingency's failure even after the parties

22  amended the financing and governmental approval contingencies."  (*Id.*)

23          A motion for reconsideration "may *not* be used to . . . present evidence for the first time

24  when [it] reasonably could have been raised earlier in the litigation."  *Kona Enters.*, 229 F.3d at

25  890 (citing *389 Orange St. Partners*, 179 F.3d at 665) (emphasis in original).  Here, HC's

26  arguments regarding the December 11, 2008 board meeting could have—and should have—been

27  presented properly at summary judgment.  HC's attempt to (partially) present the evidence it has

28  produced in support of the instant motion in its *fourth* opposition to the underlying motion for

1   summary judgment does not constitute reasonable timeliness.  Further, it is clear that HC was well

2   aware of the December 11, 2008 board meeting and the subsequent December 30, 2008

3   amendment to the ground lease long before it opposed Tri-City's motion for summary judgment.

4   Not only did HC reference the amendments to the ground lease in its opposition, but HC's

5   representative, Todd W. Kibler, signed the amendments in 2008.  (*See* Bournazian Decl. Ex. J.)

6        Thus, the Court finds HC's "new" facts and arguments are not properly raised here, as they

7   should have been presented when summary judgment was first at issue.  If failing to ascertain and

8   present facts and arguments were an adequate basis for reconsideration, parties would have an

9   incentive to hold back facts or alternative theories in order to get a second "bite at the apple" upon

10  reconsideration.  HC has not even attempted to offer a reason for the delay, and the Court cannot

11  discern one.

12  *(iv)  The Court's Prior Order Was Not in Error for Failure to Consider Board Meeting*

13       Although the Court finds HC has raised no valid basis for presenting "new" evidence in

14  support of reconsideration and denies HC's motion on that basis, even if the Court were to

15  consider HC's arguments that the Court's prior Order was in clear error, it would come to the same

16  conclusion.

17       HC's primary argument is that Tri-City ratified the ground lease or waived the pre-leasing

18  contingency by amending the ground lease twice in 2008.  HC states that a "contract which is

19  voidable solely for want of due consent, may be ratified by a subsequent consent."  (Reply ISO

20  Mot. for Recons. 6 (quoting Cal. Civ. Code section 1588)).  On this point, HC correctly states the

21  law.  The right to rescind a contract may be waived by recognition of the existence of the contract

22  after the right to rescind was created.  *Saret-Cook v. Gilbert, Kelly, Crowley, and Jennette*, 74 Cal.

23  App.4th 1211, 1226 (1999) (citing *Neet v. Holmes*, 25 Cal.2d 447, 457-458 (1944) ("An

24  affirmance of the contract at a time subsequent to the [right to rescind] . . . forecloses the exercise

25  of the right of recission.")

26       Although legally correct, HC's argument is misapplied to these facts.  In its July 11, 2011

27  Order, the Court found that the express terms of the pre-leasing contingency operated in favor of

28  both parties, and that its non-satisfaction excused both parties' performance.  (July 11, 2011 Order

13.)  Thus, Tri-City did not possess the "right to rescind."  Instead, as the Court held, HC's failure to satisfy the pre-leasing contingency by the December 31, 2007 deadline excused the performance of both parties.  The pre-leasing contingency remained in "full force and effect," as stated in both amendments, and Tri-City could properly invoke it after the fact to excuse its own performance.

The pre-leasing contingency was not amended or waived.  HC did not exercise any of the options for extension of the contingency period provided in the ground lease, and neither party executed a written waiver of the pre-leasing contingency as required by the lease.  HC's waiver argument must fail because the terms of the lease require any waiver to be in writing, not implied.  Further, the unambiguous "no waiver" provision of the lease states: "No failure by either Lessor or Lessee to insist upon the strict performance by the other of any . . . condition of this Lease, or to exercise any right or remedy consequent upon a breach thereof, shall constitute a waiver of any such breach or of such . . . condition."  (Ground Lease section 14.3; *see also* July 11, 2011 Order 14-15 n.13.)  As the Court stated in its July 11, 2011 Order, Tri-City could not waive the pre-leasing contingency solely by failing to insist upon strict compliance.  Thus, the Court has repeatedly rejected HC's invitation to imply Tri-City's waiver through its conduct.

The crux of the problem here is that, although the non-occurrence of the pre-leasing contingency discharged the performance of both parties' duties under the contract, and the contingency was not waived, both parties appear to have acted as if a contract still existed.  Tri-City twice acted to "extend the timeframe" of the ground lease, adopting two amendments in order to allow more time for HC to obtain leases.  Perhaps in reliance on an understanding that a contract still existed, HC continued to seek government approvals, pre-construction leases and letters of intent, and financing.  (*See* HC's Opp'n to MSJ 23-25, 2334 ECF No. 40 (citing Kobayashi Decl. ¶ 3-12, Keller Decl. ¶ 7-10, etc.))  Neither party has offered any explanation as to why the pre-leasing contingency date was not explicitly extended in the amendments, whether by intent, or mutual or unilateral mistake.  Nor has HC argued for the application of excuse to avoid forfeiture or any other equitable doctrines (aside from waiver) to excuse the non-occurrence of the condition.  Thus, the parties have not addressed whether the pre-leasing contingency was a material part of the agreed exchange, which it may very well have been, nor have they addressed

1   any of the factors a court must weigh in determining whether the forfeiture is "disproportionate."

2   *See* Rest. 2d Contracts § 229 comments b, c.  Neither party having provided a tenable rationale for

3   the Court to excuse the non-occurrence of the condition, the Court finds no basis to reconsider its

4   prior decision that the lease became null and void.

5     In sum, the Court finds HC has failed to present any proper reason for reconsideration.

6   Furthermore, even upon considering these "new" facts and arguments presented by HC, the Court

7   finds that its July 11, 2011 Order was not in clear error.  For these reasons, HC's motion for

8   reconsideration is **DENIED**.[7]

9     Three of the other motions presently before the Court in these cases relate closely to the

10  motion for reconsideration: Tri-City's motions in the related case, and HC and Hammes' motion

11  for a restraining order, injunction, or transfer in the lead case.  Thus, the Court considers these

12  motions next, and turns lastly to Hammes' motion for summary judgment of the last remaining

13  claim in the lead case.

14  **2. Motion for Leave to Amend Complaint in Related Case**

15  *A. Legal Standard*

16    Here, Tri-City's request for leave to amend is atypical in that it does not seek to modify or

17  add claims to its complaint, but essentially to voluntarily dismiss one of the claims.  Voluntary

18  dismissal is governed by Federal Rule of Civil Procedure 41.  Plaintiffs may voluntarily dismiss

19  actions without a court order before the opposing party serves an answer or motion for summary

20  judgment, or with the opposing party's consent.  Fed. R. Civ. P. 41(a)(1)(A).  If, as here, neither of

21  these options is available, the action may be dismissed by court order only, on "terms that the

22  court considers proper."  Fed. R. Civ. P. 41(a)(2).  Unless the court order states otherwise, a

23  dismissal under Rule 41(a)(2) is without prejudice.  *Id.*

24

---

25    [7]The Court rejects HC's assertions that reconsideration is proper because the Court ruled on claims that had been previously dismissed by Plaintiffs or because the Court did not address all of

26  HC's objections to Tri-City's evidence.  (Mem. ISO Mot. for Recons. 10.)  HC is correct that the Court's July 11, 2011 Order discussed the third cause of action as against Defendants Smith and

27  Anderson, finding them to be "not proper targets" of the claim, in spite of the fact that the Court earlier dismissed the third cause of action as against Defendants Smith and Anderson. (January 27,

28  2010 Order 9, 2324 ECF No. 13.)  In this limited respect, the Court erred.  For this reason, the Court **STRIKES** lines 20-26 on page 17 of its July 11, 2011 Order.

1    However, the Ninth Circuit has held that a voluntary dismissal may not be used to dismiss

2    fewer than all claims against a single defendant.  *Ethridge v. Harbor House Restaurant*, 861 F.2d

3    1389, 1392 (9th Cir. 1988).  Many Circuits have held that Rule 41 allows a plaintiff to dismiss all

4    of his claims against a particular defendant, but does not permit plaintiffs to pick and choose only

5    particular claims within an action.  *Id.*; *see also Campbell v. Altec Indus., Inc.*, 605 F.3d 839, 841

6    n.1 (11th Cir. 2010).  Instead, Rule 15(a) is the appropriate mechanism where a plaintiff seeks to

7    eliminate an issue, or one or more but less than all of several claims, without dismissing as to any

8    of the defendants.  *Id.* (citing 5 J. Moore, L. Lucas & J. Wicker, *Moore's Federal Practice* ¶

9    41.06-1 at 41-83 to -84 (1987)).

10    Federal Rule of Civil Procedure 15(a)(2) governs requests for leave to amend when the

11    time for amendment as a matter of course under Rule 15(a)(1) has elapsed, as it has here.[8]  When a

12    party may no longer amend its pleading as of right under Rule 15(a)(1), it "may amend its pleading

13    only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The

14    rule instructs courts to "freely give leave when justice so requires."  *Id.*  "Four factors are

15    commonly used to determine the propriety of a motion for leave to amend.  These are: bad faith,

16    undue delay, prejudice to the opposing party, and futility of amendment.  These factors, however,

17    are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend."

18    *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citations omitted).  Further,

19    "prejudice to opposing party" is "the touchstone of the inquiry" and "carries the greatest weight."

20    *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citations and internal

21    quotation marks omitted).

22    **B. Analysis**

23    Tri-City seeks to amend its complaint to eliminate the second claim for damages under a

24    breach of contract theory, leaving only its first claim for declaratory relief.  According to Tri-City,

25    it was motivated by the Court's July 11, 2011 Order in the lead case to seek dismissal of its second

26    ───────────────────

27    [8]In general, a party may amend its pleading once as a matter of course within 21 days after
service.  Fed. R. Civ. P. 15(a)(1).  Here, Tri-City has already amended its complaint once, on August

28    6, 2010.  In its amended complaint, Tri-City added the second claim for monetary damages for breach
of contract, the same claim that it now seeks to dismiss.

claim in the related case.  (Tri-City's Mem. ISO Mot. for Leave to Amend 2, 2334 ECF No. 36.)
In that Order, the Court granted judgment as to all of the claims between Tri-City and HC arising
from the ground lease.  (2324 July 11, 2011 Order 24.)  As a result, Tri-City claims dismissal of its
monetary claim in the related case, which asserts breach of the same ground lease, is proper, as it
would "narrow the claims to be submitted to a jury, allow certain issues to be tried by the Court
without a jury and streamline the presentation of the remaining claims at trial."  (Tri-City's Mem.
ISO Mot. for Leave to Amend 2.)

HC opposes any amendment of the complaint and argues the second claim, if not the entire
action, should be dismissed with prejudice.  (HC's Opp'n to Mot. for Leave to Amend 1, 2334
ECF No. 43.)  HC points out that Tri-City previously sought leave to amend its complaint to add
the second claim, and now seeks to amend its complaint a second time to remove this same claim.
In opposition to both attempts, HC stated that Tri-City's request to amend was aimed in bad faith
at delaying the proceedings and causing prejudice to HC.  HC offers as proof of this assertion that
Tri-City never sought a stipulation from HC to dismiss the claim, and instead has forced HC to
defend the claim for over a year.  HC asserts Tri-City is engaged in a bad-faith strategic plan,
which includes its earlier request to add the second claim in spite of the fact that it knew then that
the claim was legally barred because it has no damages, and its motion for summary judgment of
the second amended complaint, filed concurrently with its motion for leave to amend, which is
"not at issue yet."  (*Id.* at 5; *see also* 2334 ECF No. 37.)  In addition to Tri-City's bad faith, HC
states it will be prejudiced by further delays as a result of Tri-City's tactical maneuvers.  As a
result, HC argues that the dismissal of the second claim should be with prejudice, and that HC
should be deemed the prevailing party.

Tri-City argues it brought the present motion to amend in good faith following the Court's
Order on summary judgment.  (Tri-City's Reply ISO Leave to Amend 4, 2334 ECF No. 46.)
"Following the Court's order of July 11, 2011 in [the lead case], establishing that the Ground
Lease is 'null and void,' it was prudent for [Tri-City] to seek a dismissal of the breach of contract
claim."  (*Id.* at 4-5.)  Tri-City asserts any prejudice perceived by HC is "of its own making," and
that HC could have filed a "non-opposition" to the instant motion instead of expending further

resources drafting its opposition and a subsequent motion for summary judgment, which it filed two and a half months later.  (*Id.*; *see also* 2334 ECF No. 42.)  Tri-City questions how the elimination of a claim, narrowing the issues for trial, allowing issues to be tried without a jury, and streamlining the presentation of the remaining claims at trial, could conceivably cause prejudice to HC.  (*Id.*)

As an initial matter, the Court notes that Tri-City does not seem to oppose the dismissal of the second cause of action with prejudice.  Instead, Tri-City has correctly pointed out that voluntary dismissal under Rule 41(a) is not proper in this circumstance, and that the proper procedural avenue here is deletion of the claim by amendment.  If HC wanted to seek direct dismissal of the claim with prejudice, HC could have filed its own motion to dismiss.  Further, courts have held that the grant of a plaintiff's motion to amend, coupled with that party's announcement on the record that it will not renew this claim, operates as the functional equivalent of a dismissal with prejudice.  *See, e.g.*, *Campbell*, 605 F.3d at 841 n.1 (finding the district court's summary judgment order was a final judgment where only outstanding claims were functionally "dismissed with prejudice" when the court granted plaintiff's Rule 15(a) motion in these circumstances.)

As to HC's assertion of prejudice, the Court is not persuaded that the deletion of Tri-City's second claim, which will operate as the functional equivalent of a dismissal with prejudice, will cause HC any further prejudice.  The deletion of the second claim by amendment will not necessitate further pleadings or discovery, as HC claims.  *Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000), cited by HC in support of this proposition, concerned the lack of sufficient due process where the claimant amended its pleadings to add an additional party at the judgment stage.  Here, where a claim is being removed, not added, HC has had sufficient opportunity to respond and be heard on Tri-City's first claim, which remains unchanged, and the due process concerns at issue in *Nelson* are not presented.

Thus, the Court finds HC's arguments that the amendment will cause further delay and prejudice unfounded.  Whether or not the addition of the second claim was initially in bad faith or has already caused HC undue prejudice is another matter entirely, but one which is not presently at

09cv2324; 09cv2334

issue.  HC's argument that it will be prejudiced by amendment because it has already expended resources establishing the second claim as meritless is unfounded, as HC filed its motion for summary judgment on that claim after Tri-City's motion for leave to amend, and the Court has yet to rule on that motion.  The Court rejects HC's argument that the entire claim should be dismissed with prejudice as procedurally improper and unsupported.

For the foregoing reasons, the Court **GRANTS** Tri-City's leave to amend its complaint to delete the second cause of action against HC.  No further leave to amend will be given.  The Court addresses HC's arguments with regard to Tri-City's motion for summary judgment on its as yet unfiled second amended complaint below.

**3.  Motion for Summary Judgment in Related Case**

*A.  Legal Standard*

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Id.* at 322–23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains.  *Celotex*, 477 U.S. at 324.  The nonmoving party cannot oppose a properly supported

1    summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings."

2    *Anderson*, 477 U.S. at 256.  When ruling on a summary judgment motion, the court must view all

3    inferences drawn from the underlying facts in the light most favorable to the nonmoving party.

4    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

5          Rule 56(a) permits a party to move for partial summary judgment.  Under Rule 56(g), the

6    court "may enter an order stating any material fact . . . that is not genuinely in dispute and treating

7    the fact as established in the case."   "This adjudication . . . serves the purpose of speeding up

8    litigation by eliminating before trial matters wherein there is no genuine issue of fact."  Fed. R.

9    Civ. P. 56 advisory committee's note (addressing former Federal Rule of Civil Procedure 56(d)).

10   An order granting partial summary judgment is interlocutory in character; therefore, it is not

11   appealable "prior to the entry of final judgment in the case in the absence of a specific statute

12   authorizing an appeal."  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Ready Pac Foods, Inc.*, 782 F.

13   Supp. 2d 1047, 1051 (C.D. Cal. 2011).

14   **B.  Analysis**

15          Tri-City argues that summary judgment of its first claim against HC is proper as a result of

16   the Court's July 11, 2011 Order in the lead case, in which the Court found that the ground lease

17   was null and void and granted summary judgment of HC's claim for breach of the ground lease.

18   Pursuant to that Order, Tri-City asserts there are no triable issues of fact material to Tri-City's

19   request for declaratory judgment that the parties are excused from performance of the ground lease

20   and that HC has no further "right, title or interest" in the real property that is the subject of the

21   ground lease.  (Tri-City's Mem. ISO MSJ 3, 2334 ECF No. 37.)  Tri-City states that if its

22   concurrent motion for leave to amend is also granted, all claims between the parties will be

23   resolved and summary adjudication will be complete and final.

24          First, the Court agrees with Tri-City's assertion that summary judgment of the first claim is

25   not impacted by Tri-City's motion to amend its complaint to delete the second claim.  The first

26   claim remains the same.  Having granted Tri-City's motion to amend to delete the second claim

27   from its complaint, the Court rejects HC's arguments that the second claim fails as moot and that

28   thus summary judgment of the first claim is somehow improper.  As stated above, the Court treats

the second claim as dismissed with prejudice, and Tri-City's motion for summary judgment applies only to its first claim, which will remain unchanged from First to Second Amended Complaint.

Tri-City's first claim is for declaratory judgment.  (*See* First Am. Compl. ¶ 23, 2334 ECF No. 25.)  It states: "Pursuant to Code of Civil Procedure section 1060, TRI-CITY requests a judicial declaration that TRI-CITY is not liable to HC for development costs, that HC failed to act with commercial reasonableness in obtaining governmental approvals and sub-leases and that TRI-CITY is excused from performing further under the Lease."  (*Id.*)  Tri-City also seeks an order "determining that there are no triable issues of material fact as to the purported 'counterclaim' asserted by HC against [Tri-City] contained within HC's Answer to [Tri-City's] First Amended Complaint."  (Tri-City's Mem. ISO MSJ 2-3.)  Tri-City's three-page motion rests entirely upon the argument that the relief sought in its first claim is "the very same relief already granted" by the Court's finding that "the ground lease was null and void" in its July 11, 2011 Order.  (*Id.* at 3.)  Thus, Tri-City contends it is "entitled to a formal judgment confirming that neither HC nor [Tri-City] are required to further perform under the ground lease."  (*Id.*)

Under California law, Code of Civil Procedure section 1060, a "person interested under a written instrument . . . or under a contract" may bring an action in superior court for a "declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time."  Section 1061 gives the court the discretion to "refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances."  In exercising this discretion, courts must keep in mind that "an action in declaratory relief will not lie to determine an issue which can be determined in the underlying . . . action." *Cal. Ins. Guar. Ass'n v. Superior Court*, 231 Cal. App. 3d 1617, 1623 (1991).

Similarly, federal courts have the power to issue declaratory judgments pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, which provides in pertinent part: //

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2202(a).  The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937).  "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, Ltd., 41 F.3d 764, 775 (1st Cir.1994).  The DJA "merely offers an additional remedy to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir.1997).  Because a declaratory judgment is procedural, federal law controls.  *See Bernardi v. Amtech/San Francisco Elevator Co.*, 2008 WL 2345153 at *5 (N.D. Cal. June 5, 2008).  A claim for declaratory judgment is a form of relief; it does not by itself state a claim.  *Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1111 n. 2 (9th Cir. 1999).

A district court's decision to grant or deny declaratory relief is discretionary; it is reviewed under an abuse of discretion standard.  The Declaratory Judgment Act provides that a court "*may* declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a) (emphasis added), not that it must do so. "This text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *see also Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, n. 17 (1993); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494–496 (1942). The Supreme Court has found it "more consistent with the statute . . . to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *MedImmune*, 549 U.S. at 136 (citing *Wilton*, 515 U.S. at 289).

//

//

//

//

1    In opposition to this motion, HC relies upon many of the same arguments it asserts in its

2    motion for reconsideration in the lead case, discussed above.[10]  In addition, HC argues that

3    summary judgment is inappropriate because Tri-City failed to support its motion with any

4    evidence.  Indeed, the only supporting document Tri-City provides with respect to its motion for

5    summary judgment is a request for judicial notice of the Court's July 11, 2011 Order.  (*See* Tri-

6    City's RJN ISO MSJ Ex. 1, 2334 ECF No. 37.)

7    Although Tri-City is correct that the Court's July 11, 2011 Order adjudicated all of HC's

8    claims against Tri-City in the lead case, Tri-City's request for declaratory relief reaches too far,

9    and the Court declines to grant a declaratory judgment in the related case based solely on its

10   previous Order.  First, that Order did not determine that HC failed to act with commercial

11   reasonableness in obtaining governmental approvals and sub-leases.  The decision to declare the

12   ground lease "null and void" was based on the expiration of the pre-leasing contingency.  Further,

13   the Court has not determined that Tri-City is not liable *in any way* to HC for development costs;

14   the Court merely excused the parties' performance under the ground lease.  The Court also agrees

15   with HC that Tri-City has not properly supported its motion.  Additionally, Tri-City's tactics in

16   this case cause the Court concern.  These tactics have included amending its complaint to add the

17   second claim for relief, and now amending its complaint to delete that same claim for relief while

18   concurrently bringing this motion for summary adjudication of the first claim, which would render

19   judgment in this case final and complete.  Given the Court's considerable discretion to determine

20   when and if to issue a declaratory judgment, the Court finds this procedural history weighs against

21   granting declaratory judgment at this time.

22   For these reasons, the Court declines to decline to issue a declaratory judgment on the basis

23   of the evidence currently before it, and **DENIES** Tri-City's motion for summary judgment of its

24   first claim.

25

26   [10]HC objects to the Court's determination in its July 11, 2011 Order granting partial summary judgment that the ground lease is "null and void," arguing that it was ratified or amended by Tri-City.

27   (HC's Opp'n to Tri-City's MSJ 16-19, 2334 ECF No. 40.)  The Court thoroughly addressed these arguments with respect to HC's motion for reconsideration in the lead case, *supra* pp. 4-15, and will

28   not rehash them again here.

**4. Motion for Restraining Order, Injunction, or Transfer in the Lead Case**

*A. Legal Standard*

A district court's order restraining extrajudicial comment about a pending case constitutes a prior restraint on those parties' first amendment right to free speech. *Levine v. U.S. Dist. Court for Cent. Dist. of California*, 764 F.2d 590, 594 (9th Cir. 1985); *see also In re Halkin*, 598 F.2d 176, 183 (D.C. Cir. 1979). A court's entry of a prior restraint on publication or speech is "one of the most extraordinary remedies known to our jurisprudence," and as such is subject to strict scrutiny. *Nebraska Press Assoc. v. Stuart*, 427 U.S. 539, 562 (1975).

A party seeking to overcome the heavy presumption against prior restraints must establish that: (1) the activity it seeks to restrain poses either a clear and present danger or a serious and imminent threat to a protected competing interest, *United States v. Sherman*, 581 F.2d 1389, 1361 (9th Cir. 1978); (2) the restraint is narrowly drawn, *Carroll v. President and Commissioners of Princess Anne*, 393 U.S. 175, 183-84 (1968); and (3) less restrictive alternatives are not available, *Nebraska Press Assoc.*, 427 U.S. at 563. *See Levine v. Dist. Court*, 764 F.2d at 595. The Supreme Court has stated it is "intensely skeptical about those measure that would allow government to insinuate itself into the editorial rooms of this Nation's press." *Miami Herald Publ'g Co. v. Ronillo*, 418 U.S. 241, 259 (1974) (White, J., concurring).

Where the speech to be restrained concerns the court itself, the interest in protecting speech may be particularly strong. "Truthful reports of public judicial proceedings have been afforded special protection against subsequent punishment." *Nebraska Press Assoc.*, 427 U.S. at 559. However, in spite of the increased importance of judicial proceedings, the Supreme Court has suggested it is appropriate for a trial court to impose greater restrictions on the free speech rights of trial participants than on the rights of nonparticipants. *Shepard v. Maxwell*, 384 U.S. 333, 360-63 (1966).

Further, "the case for restraints on trial participants is especially strong with respect to attorneys." *Id.* In the case of attorneys' representations to media, courts should analyze the requested restraint in the context of the special relationship that exists between attorneys and the court system. Justice Brennan summarized that relationship as follows:

> As officers of the court, court personnel and attorneys have a fiduciary responsibility not to engage in public debate that will redound to the detriment of the accused or that will obstruct the fair administration of justice. It is very doubtful that the court would not have the power to control release of information by these individuals in appropriate cases and to impose suitable limitations whose transgression could result in disciplinary procedures.

*Nebraska Press Assoc.*, 427 U.S. at 601 n. 27 (Brennan, J., concurring) (citation omitted); *see also Levine v. Dist. Court*, 764 F.2d at 595.[11]  In *Levine*, the Ninth Circuit noted that almost all courts considering restraining orders against trial participants have upheld these restraints.  *Levine v. Dist. Court*, 764 F.2d at 596.

However, most, if not all of these trial publicity cases, including *Nebraska Press* and *Levine*, involved criminal proceedings and significant Sixth Amendment concerns.  *See Hirschkop v. Snead*, 594 F.2d 356, 373 (4th Cir. 1979) (surveying the case law on prejudicial publicity restraints and finding that "significant differences between criminal jury trials and civil cases must be considered in evaluating the constitutionality of a general rule limiting lawyers' speech concerning civil cases.")  In *Hirschkop*, the Fourth Circuit held Virginia's rule prohibiting a lawyer associated with a civil action from making a broad range of comments during the investigation or litigation of the case unconstitutional because "[t]he dearth of evidence that lawyers' comments taint civil trials and the courts' ability to protect confidential information establish that the [Virginia rule's] restrictions on freedom of speech are not essential to fair civil trials."  *Id.*

Finally, the Court notes that although prior restraint of speech is constitutionally repugnant, the First Amendment offers no protection for false or deceptive commercial speech.  *Central Hudson Gas & Elec. Corp v. Pub. Serv. Comm'n*, 447 U.S. 557, 563 (1980); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503-04 (1984).  Indeed, if a court determines that a statement constitutes unprotected speech, "it is not a prior restraint for a court to enjoin [a party]

//

---

[11]In this vein, the Southern District of California has adopted a local rule to specifically address the professionalism of attorneys, allowing the court to "take any appropriate measures to address violations of these rules."  S.D.Cal.R. 83.4.  Rule 83.4(a)(2)(a) states that attorneys must not "[d]isparage the intelligence, ethics, morals, integrity or behavior of opposing parties or counsel unless such characteristics are at issue."

1   from repeating that statement." *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1071, 1084 (C.D. Cal.

2   2003) (citing *Kramer v. Thompson*, 947 F.2d 666, 676 (3d Cir. 1991)).

3   ***B. Analysis***

4          Hammes[12] brings this motion seeking an order to restrain Tri-City from making "any

5   published and/or press statements" about this case, as well as requiring Tri-City to remove a

6   previously issued statement and issue a retraction.  (Mem. ISO Mot. for Order 3, 6-7, 2324 ECF

7   No. 91.)  Hammes argues that Tri-City's July 18, 2011 press release made misrepresentations to

8   the public about the Court's July 11, 2011 Order with the purpose of prejudicing the trial in this

9   matter.  (*Id.* at 2.)  Hammes claims that Tri-City's counsel of record, Jeffrey Lewis, is responsible

10  for the statements, because he included an advertisement for his law practice in the press release.

11  (*Id.* at 2-3.)  These statements are allegedly damaging to Hammes, and raise concerns about

12  Hammes's continued ability to receive a fair trial with an impartial jury pool.  (*Id.* at 3.)  If the

13  Court determines Hammes cannot now receive a fair trial, Hammes requests the matter be

14  transferred to another venue or that the Court take "other procedural steps" to ensure a fair trial.

15  (*Id.*)

16         Tri-City responds that the press release in question did not contain a misstatement, and

17  further was not aimed at tainting the jury pool.  (Opp'n to Mot. for Order 2, 2324 ECF No. 100.)

18  Tri-City argues that in any event it could not have tainted the jury pool, as the web page containing

19  the press release has only been viewed 292 times.  Tri-City further states that it has voluntarily

20  removed the allegedly offending press release from its website, and that the relief Hammes

21  requests would amount to a "gag" order that constitutes a prior restraint in violation of its first

22  amendment right to free speech.  (*Id.* 1.)  The Court agrees, finding that Hammes has provided no

23  substantial justification for such a restraining order or injunction.  In particular, there is no

24  evidence of a clear and present danger or serious imminent threat to a protected interest in the

25  absence of a restraining order.

26  //

_____

27         [12]This motion was brought by both Hammes and HC.  However, the public announcement at
    issue mentions only Hammes, and the parties refer only to Hammes.  Thus, for simplicity, the Court
28  refers to Hammes only as the moving party for this motion.

*(i)  The Absence of a Serious and Imminent Threat to the Administration of Justice*

Before a trial court can limit parties' and their attorneys' right to freedom of speech, the court must make sufficient specific findings establishing that the party's conduct is "a serious and imminent threat to the administration of justice."  *See CBS Inc. v. Young*, 522 F.2d 234, 239 (6th Cir. 1975) (quoting *Craig v. Harney*, 331 U.S. 367, 373 (1947)).  Here, Hammes has fallen far short of establishing such a threat.

The right to a fair trial, both in civil and criminal cases, is of the utmost importance to the administration of justice, and many courts have held that a trial judge has the authority to adopt reasonable measures to avoid injury to the parties by reason of prejudicial or inflammatory publicity.  As Justice Oliver Wendell Holmes wrote, "[t]he theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether or private talk or public print."  *Patterson v. Colorado*, 205 U.S. 454, 462 (1907); *see also CBS v. Young*, 522 F.2d at 241.

Here, Hammes claims Tri-City must be enjoined from making public statements about the case because its July 18, 2011 press release disparaged Hammes, slanders its reputation, and has affected its ability to obtain a fair and impartial trial in San Diego.  (Mem. ISO Mot. for Order 5.)

However, the Court cannot find that the statements slander Hammes' reputation without determining that the press release was false or disparaging.  In *Isuzu Motors Ltd. v. Consumers Union of U.S.*, 12 F.Supp.2d 1035, 1049 (C.D. Cal. 1998), Judge Paez dismissed the plaintiff's claim for an injunction under California Business & Professions Code § 17200, by which the plaintiff sought to enjoin defendants from "disseminating or publishing further false, defamatory or disparaging information" about them.  In dismissing the claim, the court found that "such an injunction would necessarily precede an adequate determination that a particular statement by defendant was false, defamatory, or disparaging."  *Id.*  The court noted that "once a jury has determined that a certain statement is libelous, it is not a prior restraint for the court to enjoin the defendant from repeating *that* statement."  *Id.*  (quoting *Kramer v. Thompson,* 947 F.2d 666, 676 (3d Cir. 1991)).

//

In *J.K. Harris & Co., LLC v. Kassel*, 253 F.Supp.2d 1120 (N.D. Cal. 2003), the court had initially enjoined the defendants from issuing allegedly false criticisms of plaintiff's tax representation service on their website.  On a motion for reconsideration, however, the court acknowledged that it had overlooked the prior restraint doctrine in favor of the standard for preliminary injunctive relief.  Upon reconsideration, the court decided to lift the preliminary injunction on the ground that "enjoining these statements prior to an adjudication of their truth or falsity would suppress arguably protected speech." *Id.* at 1129.

Here, where Hammes claims Tri-City is misrepresenting the Court's Order, the Court theoretically might be able to determine on its own that the statement is clearly false.  However, based on the evidence before it, the Court finds it cannot deem the statement "The July 11 order expressed great doubt as to whether Hammes' sole remaining claim against Tri-City is even viable" blatantly false or slanderous.  (*See* Mem. ISO Mot. for Order 2.)  Thus, the Court finds that Tri-City's public statements about a civil case to which it is a party are protected speech, and that any limitation on those statements would constitute a prior restraint.

All of the cases to which Hammes cites are either criminal cases, cases with massive publicity, or both.  In contrast, here Hammes cannot show that more than a few hundred people have viewed the allegedly offensive press release.  The press release is almost exclusively factual in nature, stating the procedural posture of the two cases and quoting from the Court's July 11, 2011 Order.  (Mot. for Order Ex. 2.)  The Court finds no basis for deeming Tri-City's press release a serious and imminent threat to the administration of justice to justify the extreme remedy of imposing a restraint on the parties' speech.

*(ii)  Change of Venue Inappropriate*

For the foregoing reasons, a change of venue is also inappropriate.  A court may change the trial venue or postpone the trial date as an alternative to a restraining order where it is concerned about a party's ability to obtain a fair trial in the current venue. *Levine v. Dist. Court*, 764 F.2d at 600.  However, where, as here, the Court is not concerned about a threat to the administration of justice, the Court also finds no basis for change of venue or postponement.  Should the case //

1   proceed to trial, potential jurors will be screened for bias and impartiality resulting from having

2   read Tri-City's press release.

3   *(iii)  Sanctions Inappropriate*

4         Although Hammes is correct that attorneys owe the Court a special duty of candor and

5   professionalism, the Court finds sanctions unwarranted at this time.  Tri-City's statement that

6   Hammes had "tried to intimidate" Tri-City may border on disparaging the integrity of the opposing

7   party in contravention of Local Rule 83.4, and Tri-City's counsel is reminded of its duty of

8   professionalism.  However, finding this instance to be relatively minor and without significant

9   impact to Hammes, the Court declines to exercise its discretion to sanction Jeffrey Lewis.

10   **5. Motion for Summary Judgment in the Lead Case**

11   *A. Legal Standard*

12         See the Court's previous discussion of the legal standard governing summary judgment,

13   *supra* pp. 19-20.

14   *B. Analysis*

15         Having declined to reconsider its July 11, 2011 Order granting summary judgment of

16   Hammes and HC's claims two through six in the lead case, Hammes' first claim is its sole claim

17   remaining in that case.  Hammes now moves for summary judgment of that claim.  Hammes

18   argues that Tri-City breached the May 2005 letter of intent in failing to pay Hammes 100% of its

19   initial development costs and a breakage fee as the contract required after Tri-City's actions

20   triggered the letter of intent's reimbursement provision in one way or another.  (Hammes' Mem.

21   ISO MSJ 2, 2324 ECF No. 92.)

22         The 2005 letter of intent requires Tri-City to reimburse Hammes for its initial development

23   costs if Tri-City "decides at its sole discretion not to proceed with the Project . . . decides not to

24   proceed with the ambulatory surgery center, or . . . reduces the scope of the surgery center in such

25   a way that it jeopardizes the feasibility of the project." (Letter of Intent 6.)  The letter of intent

26   also contains other provisions, including an agreement to negotiate in good faith toward a final and

27   binding agreement, and provision for payment of a breakage fee. (*See* July 11, 2011 Order 18.)

28   //

1   The extent to which the provisions other than those regarding initial development costs are binding

2   upon the parties is disputed.

3          In its July 11, 2011 Order, the Court denied Tri-City's motion for summary judgment of

4   Hammes' first claim for breach of the letter of intent. The Court found that "a genuine issue of

5   material fact exists as to whether Tri-City unilaterally terminated the project," and "a genuine

6   issue of material fact also exists as to whether Hammes incurred any damages." (July 11, 2011

7   Order 6.)  The Court agrees with its earlier findings.

8          Hammes rehashes most of the same arguments in support of its instant motion for summary

9   judgment of this claim.  Hammes argues that Tri-City decided in its sole discretion not to proceed

10   with the project at a March 17, 2009 board meeting that "set the framework for [Tri-City's]

11   termination of the Project." (Hammes' Mem. ISO MSJ 2.)   Following its unilateral decision to

12   terminate the project, which Hammes contends occurred at least no later than April 2009, Tri-City

13   apparently acknowledged it was liable for some of Hammes' initial development costs and

14   "approved the payment of at least $450,000 to Hammes." (*Id.*)  Hammes states it "relied on these

15   representations to cease further efforts to lease, finance, and move the Project forward." (*Id.* at 6.)

16   In the alternative, Hammes argues Tri-City breached the letter of intent by jeopardizing the

17   feasibility of the project. (*Id.* at 16.)  Thus, Hammes claims damages of $1,717,675 in out-of-

18   pocket costs, lost fees, and "breakage fee" of $10,000 per month spent working on the project. (*Id.*

19   at 20-21.)

20          Tri-City now contends, as it did earlier in support of its own motion for summary judgment

21   of this claim, that it is not liable because Tri-City never terminated the letter of intent, and that any

22   decision to terminate the project was mutual or made by Hammes. (Tri-City's Opp'n to MSJ 5-6,

23   2324 ECF No. 99.)  Tri-City asserts that evidence of Hammes' earlier breaches raises a triable

24   issue of fact sufficient to preclude summary judgment.  Further, Tri-City argues the letter of intent

25   is unenforceable because it is illusory and because it was supplanted, pursuant to the parties'

26   intent, by the later-executed ground lease. (*Id.* at 7.)   In the alternative, Tri-City proposes that

27   even if it owes initial development costs under the letter of intent, the letter of intent's provision

28   for a breakage fee was non-binding. (*Id.* at 15.)

1     As the Court previously found in its July 11, 2011 Order, a genuine issue of material fact

2  exists.  Without restating here the evidence contained in various conflicting depositions, the Court

3  finds there are far too many conflicting accounts, and that the resolution of Hammes' first claim

4  would require the Court to weigh the credibility of witnesses and evidence, rendering summary

5  judgment inappropriate.  Viewing the evidence in the light most favorable to Tri-City, the Court

6  concludes that genuine issues of material fact remain at the very least as to whether either party

7  "decided" not to proceed with the project or the ambulatory surgery center under the terms of the

8  letter of intent.  The Court is even less equipped to determine at the summary judgment stage the

9  heavily fact-intensive issue of whether Tri-City jeopardized the feasibility of the project.  For these

10  reasons, the Court **DENIES** Hammes' motion for summary judgment of its first claim.

11  **6.  Ex Parte Motion to Dismiss Defendant Anderson**

12  *A.  Legal Standard*

13     As stated above with regard to Tri-City's motion to amend its complaint, voluntary

14  dismissal is governed by Federal Rule of Civil Procedure 41.  A plaintiff may voluntarily dismiss a

15  defendant without a court order before the opposing party serves an answer or motion for summary

16  judgment, or with the opposing party's consent.  Fed. R. Civ. P. 41(a)(1)(A).  If, as here, neither of

17  these options is available, the action may be dismissed by court order only, on "terms that the

18  court considers proper."  Fed. R. Civ. P. 41(a)(2).  Unless the court order states otherwise, a

19  dismissal under Rule 41(a)(2) is without prejudice.  *Id.*

20  *B.  Analysis*

21     In its July 11, 2011 Order, the Court summarily adjudicated claims two through six of

22  Hammes and HC's suit, several of which were brought against Defendants Anderson and Smith.

23  As Tri-City points out, the Court granted summary judgment as to all of the pending claims against

24  Defendant Anderson in that Order.  (Opp'n to Mot. to Dismiss 1, 2324 ECF No. 107.)  As

25  Hammes and HC have no remaining claims against Defendant Anderson in either case, the Court

26  finds dismissal of Defendant Anderson at this time to be improper.

27     Hammes and HC argue that voluntary dismissal without prejudice is appropriate after the

28  grant of partial summary judgment, citing *Romoland School Dist. v. Inland Empire Energy Center,*

1    *LLC*, 548 F.3d 738, 748 (9th Cir. 2008) and *James v. Price Stern & Sloan, Inc.*, 283 F.3d 1064,

2    1065 (9th Cir. 2002) as authority for this proposition.  However, these cases are inapposite.

3           Both *James* and *Romoland* concern the final judgment rule and discuss whether a voluntary

4    dismissal without prejudice may create an appealable final judgment.  In *James*, the Ninth Circuit

5    affirmed the district court's grant of the plaintiff's motion to dismiss her remaining claims so that

6    she could pursue appeal after the court had granted partial summary judgment dismissing the

7    majority of her claims.  *James*, 283 F.3d at 1065.  Although the dismissal was without prejudice,

8    the Ninth Circuit determined the judgment was final and appealable in this circumstance.  *Id.* at

9    1070.  The Ninth Circuit subsequently clarified that *James* had carved out "an exception to the

10   general rule that 'in the absence of [a Rule 54] determination … any order or other form of

11   decision, however designated, which adjudicates fewer than all the claims … shall not terminate

12   the action as to any of the claims[.]'"  *Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 888-89

13   (9th Cir. 2003) (quoting Fed.R.Civ.P. 54(b)).

14          In *Romoland*, plaintiffs sought the voluntary dismissal of their claims in order to appeal

15   two of the district court's otherwise interlocutory orders, one of which dismissed some of their

16   other claims and the other of which denied their motion for a preliminary injunction.  *Romoland*,

17   548 F.3d at 749.  The Ninth Circuit declined to extend the exception created by *James* to those

18   facts, adopting instead the "pragmatic evaluation of finality" approach and concluding it was

19   proper to treat dismissal of the plaintiffs' claims as being with prejudice for the purposes of that

20   appeal.  *Id.* at 750.

21          Neither of these cases comes close to counseling dismissal of Hammes and HC's claims

22   against Defendant Anderson here.  This does not even appear to be an instance where Hammes and

23   HC seek to create a final judgment so as to appeal the Court's earlier orders, as Hammes and HC

24   point out that the Court's July 11 Order "denies aspects of the request and the cases are set to

25   proceed to trial.  There is no final judgment."  (Mot. to Dismiss 5, 2324 ECF No. 106.)  Instead,

26   Hammes and HC claim that "the dismissal, without prejudice, will allow the matter to proceed to

27   trial and/or judgment without Mr. Anderson's participation."  (Mot. to Dismiss 6.)  However,

28   //

1    dismissal is unnecessary to achieve this aim, as all claims against Mr. Anderson have already been

2    dismissed through the Court's July 11, 2011 grant of partial summary judgment.

3         As a result, the Court can find no reason to dismiss Defendant Anderson, and **DENIES**

4    Hammes and HC's ex parte motion to dismiss Defendant Anderson.

5                                              **CONCLUSION**

6         For the aforementioned reasons, the Court **DENIES** HC's motion for reconsideration.  The

7    Court **GRANTS** Tri-City's request for leave to amend and **DENIES** its motion for summary

8    judgment in the related case.  The Court **DENIES** Hammes' motion for restraining order,

9    injunction, or transfer in the lead case.  Finally, the Court **DENIES** Hammes' motion for summary

10   judgment of the last remaining claim in the lead case and **DENIES** Hammes' ex parte motion to

11   dismiss Defendant Larry Anderson in both cases.

12        Following entry of this Order, Tri-City **SHALL FILE** a Second Amended Complaint

13   containing only its first claim for declaratory relief, identical to its First Amended Complaint (ECF

14   No. 25) except without the second claim.  This is the sole remaining claim in the related case.  In

15   the lead case, only Hammes's first claim for breach of the letter of intent against Tri-City remains.

16        The parties **SHALL APPEAR** at the final pretrial conference currently set for January 26,

17   2012 at 1:30 p.m. in Courtroom 6.  HC's motion for summary judgment is pending in the related

18   case (2334 ECF No. 42), and Tri-City's motion for sanctions is pending in the lead case (2324

19   ECF No. 101).  The parties **SHALL FILE** any opposition to these motions by January 9, 2012.

20   The moving party **SHALL FILE** its reply by January 16, 2012.

21        **IT IS SO ORDERED**.

22

23   DATED:  December 13, 2011

24                                              _____
                                                Honorable Janis L. Sammartino
25                                              United States District Judge

26

27

28